UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                                      :
THE PROFESSIONAL STAFF                       :
CONGRESS/CUNY,                                      :
                                                                      :
                            Plaintiff,               :      Civil Action No.
                                                                      :      1:20-cv-05060 (JSR)(BM)
                            vs.                                    :
                                                                      :
FELIX V. MATOS RODRIGUEZ, CHANCELLOR :
OF THE CITY UNIVERSITY OF NEW YORK,      :
IN HIS OFFICIAL CAPACITY; AND THE CITY :
UNIVERSITY OF NEW YORK,                   :
                                                                    :
                            Defendants.            :
------------------------------------------------------------ x

# REPLY BRIEF OF THE PROFESSIONAL STAFF CONGRESS/CUNY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

Page(s)

I.  PSC IS LIKELY TO SUCCEED ON THE MERITS OF ITS § 1983 CLAIM .................. 1

    A.  Congress Intended § 18006 to Benefit the Adjuncts .............................................. 1

    B.  It Would Not Strain Judicial Competence to Enforce § 18006 ............................. 5

    C.  CUNY Has a Binding Obligation Under § 18006 .................................................... 6

    D.  CUNY Deprived the Laid Off Adjuncts of Their § 18006 Rights ........................... 6

II. PSC WILL SUFFER IRREPARABLE HARM WITHOUT A PI ..................................... 8

III. THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST SUPPORT GRANTING A PI ................................................................................................................... 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Biodiversity Legal Found. v. Babbitt*,
   146 F.3d 1249 (10th Cir. 1998) ...................................................................................................3

*Blessing v. Freestone*,
   520 U.S. 329 (1997)..............................................................................................................1, 5, 6

*Briggs v. Bremby*,
   792 F.3d 239 (2d Cir. 2015)..................................................................................................3, 5

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund, Ltd.*,
   598 F.3d 30 (2d Cir. 2010)........................................................................................................1

*City of Columbia S.C. v. Costle*,
   710 F.2d 1009 (4th Cir. 1983) ..................................................................................................4

*City of Marietta v. Summerour*,
   302 Ga. 645 (2017) ...................................................................................................................4

*Commc'ns Workers of Am. Dist. One v. NYNEX Corp.*,
   898 F.2d 887 (2d Cir. 1990).................................................................................................8, 9

*Cruz v. Zucker*,
   116 F.Supp.3d 334 (S.D.N.Y. 2015) (Rakoff, J.) ...........................................................2, 3, 5

*CVS Pharmacy, Inc. v. Press America, Inc.*,
   377 F.Supp.3d 359 (S.D.N.Y. 2019)........................................................................................8

*In re Edelman*,
   295 F.3d 171 (2d Cir. 2002).....................................................................................................3

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002)..................................................................................................................1

*Gottlieb v. Carnival Corp.*,
   436 F.3d 335 (2d Cir. 2006)......................................................................................................6

*Grammar v. John J. Kane Reg'l Centers-Glen Hazel*,
   570 F.3d 520 (3d Cir. 2009)...........................................................................................3, 4, 5

*LaForest v. Former Clean Air Holdings Co., Inc.*,
   376 F.3d 48 (2d Cir. 2004).......................................................................................................9

*M.K.B. v. Eggleston*,
 445 F.Supp.2d 400 (S.D.N.Y. 2006) (Rakoff, J.) .............................................................. 2, 3, 6

*Mastrio v. Sebelius*,
 768 F.3d 116 (2d Cir. 2014) ........................................................................................................ 1

*N.Y. State Citizens' Coal. for Children v. Poole*,
 922 F.3d 69 (2d Cir. 2019) ................................................................................................ 2, 3, 5

*New York v. U.S. Dep't of Labor*,
 20-CV-3020 (JPO) (S.D.N.Y. Aug. 3, 2020) ............................................................................. 7

*Providence Health Sys. Oregon v. Walker*,
 252 Or..App. 489, 501–02 (2012) .............................................................................................. 4

*Sabree ex rel. Sabree v. Richman*,
 367 F.3d 180 (3d Cir. 2004) ....................................................................................................... 2

*SMS Data Prod. Grp. Inc. v. United States*,
 853 F.2d 1547 (D.C. Cir. 1988) .................................................................................................. 3

*Strouchler v. Shah*,
 891 F.Supp.2d 504 (S.D.N.Y. 2012) .......................................................................................... 8

*United Steelworkers v. Textron, Inc.*,
 836 F.2d 6 (1st Cir. 1987) .......................................................................................................... 9

*Walker v. Eggleston*,
 No. 04-CV-0369 (WHP), 2005 WL 639584 (S.D.N.Y. Mar. 25, 2005) ................................... 1

*Whelan v. Colgan*,
 602 F.2d 1060 (2d Cir. 1979) ..................................................................................................... 9

*Wilder v. Virginia Hosp. Ass'n*,
 496 U.S. 498 (1990) ................................................................................................................... 5

*Williams v. Taylor*,
 529 U.S. 362 (2000) ................................................................................................................... 3

**Statutes**

42 U.S.C. § 1983 ................................................................................................................. 1, 3, 5, 6

CARES Act ............................................................................................................................ *passim*

Coronavirus Aid, Relief, and Economic Security Act § 18006 ............................................ *passim*

Medicaid Act ........................................................................................................................... 2, 5

**Other Authorities**

Eleventh Amendment..................................................................................................................8

The Professional Staff Congress/CUNY ("PSC") respectfully submits this reply memorandum of law in further support of its motion for a preliminary injunction ("PI").[1]

I.   PSC IS LIKELY TO SUCCEED ON THE MERITS OF ITS § 1983 CLAIM

PSC satisfies the three-part *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997) test used to determine whether Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") § 18006 created a federal right for university employees enforceable through 42 U.S.C. § 1983. Memorandum of Law in Support of PSC's Motion for a Preliminary Injunction ("P. Mem.") at 11-15 [Dkt. No. 16]. As CUNY failed to take steps to pay the adjuncts to the greatest extent practicable during the period of coronavirus disruption, CUNY deprived the adjuncts of their § 18006 rights. Accordingly, PSC is likely to succeed on the merits of its § 1983 claim.[2]

   A.   Congress Intended § 18006 to Benefit the Adjuncts

Section 18006, entitled "Continued Payment To Employees," demonstrates Congress's unambiguous intent to benefit university employees during periods of coronavirus disruptions. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) ("For a statute to create such private rights, its text must be 'phrased in terms of the persons benefitted.'") (citations omitted); *see also Walker v. Eggleston*, No. 04-CV-0369 (WHP), 2005 WL 639584 (S.D.N.Y. Mar. 25, 2005).

---

[1] PSC seeks a PI applicable only to CUNY's Fall 2020 semester. The ultimate relief PSC seeks is an injunction barring CUNY from laying off adjuncts "until the conclusion of the period of disruption . . . related to the coronavirus." Amended Complaint [Dkt. No. 9], Prayer For Relief, §§ 1, 2. The PI sought would not grant PSC all of the relief it seeks.

[2] Defendants incorrectly contend that PSC seeks a mandatory injunction. PSC seeks a prohibitory injunction to preserve the *status quo ante*, "the last actual peaceable status which preceded the pending controversy." *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (per curiam). The last "peaceable status" was when CUNY received CARES Act funds with the requirement to continue to pay employees to the greatest extent practicable during coronavirus disruptions. PSC is entitled to a PI under either the "likelihood of success" or the more lenient "serious question" standard. *See Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30 (2d Cir. 2010). For brevity, PSC addresses only the "likelihood of success" standard in this memorandum. *See* P. Mem. at 22 for argument on the "serious question" standard.

9526725.1

Section 18006 mandates that CUNY "shall to the greatest extent practicable, continue to pay its employees" during such disruptions. The statute therefore confers a right to continued salary on an identifiable, specific class. *See Cruz v. Zucker*, 116 F.Supp.3d 334, 343 (S.D.N.Y. 2015) (Rakoff, J.) (noting the "Availability Requirement" in the Medicaid Act, which required assistance "to all individuals" who meet eligibility criteria, was "precisely the unmistakable focus on the benefitted class" and evinced Congressional intent to create an individual right) (internal citations omitted); *see also M.K.B. v. Eggleston*, 445 F.Supp.2d 400, 428 (S.D.N.Y. 2006) (Rakoff, J.).

Section 18006 focuses on university workers' need to be paid during the pandemic; to meet that need, it requires universities to pay their workers unless doing so would be entirely impracticable. The Supreme Court has "repeatedly recognized" that a statute creates an enforceable right when it "confers a specific monetary entitlement on an identified beneficiary." *N.Y. State Citizens' Coal. for Children v. Poole*, 922 F.3d 69, 81 (2d Cir. 2019) (quoting *Cal. State Foster Parent Ass'n v. Wagner*, 624 F.3d 974, 978 (9th Cir. 2010)). Section 18006's language expresses Congress's intent to confer individual rights on employees. *See Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 190 (3d Cir. 2004) (individual focus was "unmistakable" where statute required states to provide medical services "with reasonable promptness" to "all eligible individuals").

In addition, § 18006 is focused and definite as to the benefit conferred: a specific monetary entitlement (an employee's salary) on an identified beneficiary (the employee). Indeed, the § 18006 benefit is more focused and well-defined than the benefit in *Poole*, where the statute allowed the state discretion to calculate costs and determine payments. *Poole*, 922 F.3d at 82.

Defendants mistakenly claim in their opposition brief ("D. Mem.") [Dkt. No. 25] that § 18006 speaks to CUNY's conduct as a funding recipient. D. Mem. at 16. A provision that imposes a *duty* on the state can be enforced through § 1983 where its *purpose* is to protect individual rights. *Grammar v. John J. Kane Reg'l Centers-Glen Hazel*, 570 F.3d 520, 530 (3d Cir. 2009). Indeed, the Second Circuit and this Court have found a federal right when a statute imposes a duty on the state. *See Poole*, 922 F.3d at 73; *Cruz*, 116 F.Supp.3d at 334; *M.K.B.*, 445 F.Supp.2d at 400. Since § 18006 is designed to protect workers during the pandemic, its language is "fully consistent with a legislative intent to confer enforceable rights upon the relevant plaintiffs." *Briggs v. Bremby*, 792 F.3d 239, 241, 244 (2d Cir. 2015) (enforceable right where the statute imposed a duty to "promptly determine" eligibility for food stamps).

Defendants' claim, D. Mem. at 20, that § 18006 does not confer "specific payments" because it requires a funding recipient to pay its employees only to the "greatest extent practicable" ignores the clear statutory mandate. *In re Edelman*, 295 F.3d 171, 177 (2d Cir. 2002) ("Where the statutory terms are clear, our inquiry is at an end."). Defendants' argument—that § 18006 imposes no obligation — renders § 18006 meaningless and is contrary to the principle of statutory construction that courts must "give effect, if possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 364 (2000).

The phrase "to the greatest extent practicable" imposes a "clear duty" to "fulfill the statutory command to the extent that it is feasible or possible." *Biodiversity Legal Found. v. Babbitt*, 146 F.3d 1249, 1254 (10th Cir. 1998); *SMS Data Prod. Grp. Inc. v. United States*, 853 F.2d 1547, 1553 (D.C. Cir. 1988) (provision requiring that contracting officer "shall obtain competition to the maximum extent practicable" required officer to act "in the most competitive manner feasible").

Courts reject arguments, like Defendants' here, that laws requiring compliance "to the greatest extent practicable" impose obligations that may be avoided if the obligee so chooses. Entities cannot avoid their obligations under such statutes merely because compliance is "uneconomical." *City of Columbia S.C. v. Costle*, 710 F.2d 1009, 1013–14 (4th Cir. 1983) (statute requiring grant recipients to comply "to the greatest extent practicable under state law" means "the state must comply . . . notwithstanding that such compliance may be 'uneconomical.'"). *See also City of Marietta v. Summerour*, 302 Ga. 645, 653 (2017) ("[T]o say that one must comply with a requirement 'to the greatest extent practicable' is not to say that he must comply with it only 'if he feels like complying' or 'if he thinks it is a good idea.'"); *Providence Health Sys. Oregon v. Walker*, 252 Or..App. 489, 501–02 (2012) (potential for increased burden of litigation did not excuse compliance where required "to the greatest extent practicable").

Accordingly, CUNY cannot evade its statutory obligation to continue to pay its employees "to the greatest extent practicable" by claiming that the obligation is too vague or discretionary to enforce. *See, e.g.*, *Grammar*, 570 F.3d at 529 (provision that required a nursing facility to maintain the "highest practicable . . . well-being of each resident" was "replete with rights-creating language"). Rather, it may lay off the adjuncts only if it is not otherwise possible to pay them. Defendants make no such argument, admitting that it is possible to pay the laid-off adjuncts from the CARES Act funds *alone*, but that they prefer not to.[3]  D. Mem. at 9.

---

[3] Section 18006 does not guarantee permanent employment for university employees, and does not bar universities from dismissing employees for poor performance or misconduct. Rather, it bars universities from laying off employees because of coronavirus disruptions unless it is impracticable to continue to pay them. Here, however, CUNY admits to laying off the adjuncts *solely* because of coronavirus disruptions and its policy choices. *See* Part I(D), *infra*.

- 4 -

B.     It Would Not Strain Judicial Competence to Enforce § 18006

Section 18006 is "not so vague and amorphous that its enforcement would strain judicial competence." *Briggs*, 792 F.3d at 242.  The relevant inquiry is not whether § 18006 prescribes how CARES Act funding must be allocated between student aid and salaries, as Defendants argue, D. Mem. at 9.  Rather, the question is if the judiciary can determine whether an employee has been paid to the greatest extent practicable *using any money in CUNY's budget*, not just what it received through the CARES Act.

*Grammar* is on point.  There, plaintiff brought a § 1983 claim to enforce the Federal Nursing Home Reform Amendments, which required that nursing facilities provide services to maintain the "highest practicable . . . well-being of each resident." 570 F.3d at 524 (citing 42 U.S.C. § 1396r(b)(2)(A)).  The court concluded that enforcing this provision would not strain judicial resources, reasoning that it was not overly vague or amorphous.  *Id.* at 528.  As a court can determine whether a state has provided healthcare services to the "highest" practicable extent, so too can it determine whether CUNY has paid its employees to the "greatest" practicable extent.

This conclusion is supported by other precedent.  A federal right is enforceable even where it confers "substantial discretion." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 519 (1990).  As this Court noted in *Cruz*, "[t]o be sure, [the Medicaid Act] gives the state a considerable measure of discretion.  It does not, however, render the asserted right entirely standardless." 116 F.Supp.3d at 344-45.  Although CUNY might have some leeway to determine whether it has enough money to pay its employees, that does not render § 18006 unenforceable.  Indeed, applying § 18006 is no more onerous than enforcing other provisions that were found judicially manageable under *Blessing*.  *See Poole*, 922 F.3d at 83 ("[R]ate-

- 5 -

settings that require a state to determine what is reasonable, adequate, efficient, and economical are fit for judicial review.").

      C.      <u>CUNY Has a Binding Obligation Under § 18006</u>

Section 18006 states that CUNY "shall" pay its employees to the greatest extent practicable. This imposes a binding obligation on CUNY. *See M.K.B.*, 445 F.Supp.2d at 428 ("[T]he statute is couched in mandatory terms ('the State agency *shall*'")) (emphasis in original).

Defendants claim that § 18006 "does not impose any binding obligation." D. Mem. at 21. They are incorrect. If § 18006 imposed no obligation, there would have been no need to enact it. CUNY's proffered interpretation of § 18006 is incorrect because, like any statute, it must be construed to give force and effect to its provisions. *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 339 (2d Cir. 2006). Section 18006 is not permissive simply because Congress did not denote in precise detail the steps an employer must take to satisfy its obligation to pay its employees to the "greatest extent practicable." CUNY cannot read § 18006 out of the CARES Act simply because, in laying off the adjuncts, it ignored it.[4] *See* Declaration of Matthew Sapienza ("Sapienza Decl.") [Dkt. No. 24], ¶ 11.

      D.      <u>CUNY Deprived the Laid Off Adjuncts of Their § 18006 Rights</u>

Section 18006 obligated CUNY to pay its employees during coronavirus disruptions to the greatest extent practicable. By its terms, § 18006 does not limit CUNY's obligation to the amount of CARES Act money it received. *See* discussion at Part I(B), *supra*. CUNY conceded it laid off the adjuncts because of the coronavirus-related budget cuts and anticipated budget cuts, and for no other reason: "Faced with extreme announced and projected budget cuts, as well

---

[4] If the three-part test is satisfied, a rebuttable presumption attaches that § 1983 enforcement is available. *Blessing*, 520 U.S. at 341. As explained in PSC's moving papers—and as effectively conceded by CUNY—the CARES Act oversight mechanisms are not sufficiently comprehensive to rebut this presumption. D. Mem. at 19 n.11.

as projected enrollment losses, CUNY campuses determined that it had to decline to renew the appointments of approximately 2,800 adjuncts." Sapienza Decl., ¶ 11. CUNY's gratuitous assertion about non-reappointment of adjuncts in previous years for reasons not related to the coronavirus, *id.*, n.3, is irrelevant given its unambiguous admission that the layoffs here were solely due to the coronavirus.

CUNY received $251 million in CARES Act funds, of which $132 million is not yet spent. *Id.*, ¶ 17. CUNY's projection of its funding from the State, City, and tuition for fiscal year 2021 is at least $3.6 billion—$464.4 million from the City for CUNY community colleges, *id.*, ¶ 3, $2 billion from the State, *id.*, ¶ 4, and $1.136 billion in tuition, *id.*, ¶¶ 2, 6 (fiscal year 2020 tuition of $1.2 billion reduced by projected $64 million loss of tuition due to projected 4.1% drop in enrollment). *Id.*, ¶¶ 2, 3, 6. While CUNY may believe that the State will cut funding, that has not happened yet. *Id.*, ¶ 4.

CUNY made a policy decision to spend none of the remaining $132 million CARES Act funds to pay adjuncts. D. Mem. at 9 ("if CUNY were to rehire the adjuncts . . . it would either have to make severe cuts elsewhere or *take a significant portion of the CARES Act money that CUNY plans to allocate* [elsewhere]." (emphasis added). CUNY thus admits that while it can continue to pay the adjuncts, as a policy matter it prefers not to. This violates § 18006.[5]

---

[5] CUNY's argument that it may have to use CARES Act funds to pay adjuncts "who might have no classes to teach *if enrollment decreases further*" misses the point. D. Mem. 9. (emphasis added). Section § 18006's protections are not dependent on work availability. The statute contemplates disruption or closures because of the coronavirus, which must include decreased work availability. *See New York v. U.S. Dep't of Labor*, 20-CV-3020 (JPO) at *2 (S.D.N.Y. Aug. 3, 2020) (Analyzing the Families First Coronavirus Recovery Act ("FFCRA") and noting the multifold impact of the coronavirus on American workers). Moreover, CUNY is in direct control of the number of classes and services it will offer. CUNY cannot shirk its statutory responsibility by eliminating classes or work availability. Cf. *id.* at 11-17 (U.S. Department of Labor rules' "work availability requirement", excluding coronavirus paid sick leave benefits from employees whose employers lack work, was inconsistent with FFCRA.).

The budget numbers in the Sapienza Declaration show that it is practicable for CUNY to continue to employ the adjuncts for the Fall 2020 term. The $30 million cost to employ the adjuncts, Sapienza Decl. ¶ 11, is less than 1% of CUNY's current funding for fiscal year 2021. CUNY laid off the adjuncts while it still had $132 million in CARES Act funds available. CUNY offers no evidence that it took any measures to continue to pay the affected adjuncts. And, CUNY admits it laid off the adjuncts not because it was impracticable to continue to pay them, but for policy reasons. D. Mem. at 9. The Court should not permit CUNY to violate the adjuncts' § 18006 rights solely because CUNY made a policy choice to spend money differently.

II.   PSC WILL SUFFER IRREPARABLE HARM WITHOUT A PI

The Eleventh Amendment protects CUNY from paying damages if the adjuncts are found to have been unlawfully laid off, causing irreparable harm absent a PI. P. Mem. at 7-10. Moreover, the laid-off adjuncts' loss of income is irreparable harm. *Id*. at 8. Defendants ignore both of these arguments in their opposition, and thus concede that PSC has shown irreparable harm. *See CVS Pharmacy, Inc. v. Press America, Inc.*, 377 F.Supp.3d 359, 383 (S.D.N.Y. 2019).

Further, those adjuncts who lose medical coverage will suffer irreparable harm. P. Mem. at 7-8. "[T]here is Second Circuit and out-of-circuit appellate law holding that the mere threat of a loss of medical care, even if never realized, constitutes irreparable harm." *Strouchler v. Shah*, 891 F.Supp.2d 504, 522 (S.D.N.Y. 2012); *see also Commc'ns Workers of Am. Dist. One v. NYNEX Corp.*, 898 F.2d 887, 891 (2d Cir. 1990).

Defendants cite no authority for their speculative argument that the possible availability of alternative medical coverage, including Medicaid, ameliorates the irreparable harm caused by a loss of medical coverage.[6] D. Mem. at 24. This is because no case so holds. Numerous courts

---

[6] Defendants assert, falsely, that PSC has represented that only 422 adjuncts will lose health insurance. D. Mem. at 24. CUNY provided information to PSC indicating that CUNY expects

- 8 -

9526725.1

since Medicaid's enactment have found that loss of medical coverage causes irreparable harm. *See, e.g.*, *Nynex*, 898 F.2d at 891-92; *Whelan v. Colgan*, 602 F.2d 1060, 1062 (2d Cir. 1979); *United Steelworkers v. Textron, Inc.*, 836 F.2d 6, 8 (1st Cir. 1987); *see also LaForest v. Former Clean Air Holdings Co., Inc.*, 376 F.3d 48, 55–56 (2d Cir. 2004) (rejecting argument that because 90% of affected individuals were eligible for Medicare, district court erred in issuing preliminary injunction barring company from reducing retiree medical benefits).

Defendants further mistakenly argue that to show irreparable harm, PSC must prove that each adjunct who will lose medical coverage has a medical condition that requires ongoing medical care. D. Mem. at 24. The Second Circuit requires no such showing. *See, e.g.*, *LaForest*, 376 F.3d at 55–56. In *LaForest*, the Second Circuit rejected the defendant's argument that the plaintiffs had failed to produce sufficient evidence of irreparable harm, noting that "[w]hile it is possible that class members will suffer varying degrees of harm, such is the nature of induction. It does not produce certainty. It produces probability." 376 F.3d at 57, n.7.

### III. THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST SUPPORT GRANTING A PI

The public interest is served by requiring Defendants to comply with federal law, and the reinstatement of adjuncts will benefit CUNY's students. P. Mem. at 23-24. In opposition, Defendants attempt to pit the interests of the adjuncts against those of CUNY's students,

---

422 adjuncts who were then receiving medical coverage under the NYC Health Benefits Program would become ineligible for coverage because of layoffs and hours reduction. Declaration of Barbara Bowen ("Bowen Decl.") [Dkt. No. 21], ¶ 37. Other adjuncts will lose medical coverage under the New York State Health Insurance Program due to the layoffs. *Id.* CUNY has not provided the number of those adjuncts affected. CUNY has also not provided the number of CET, CLIP, and CUNY Start instructors who will lose medical coverage. Therefore, PSC does not know the total number of adjuncts who will lose medical coverage. And, CUNY's suggestion that because *only* 422 adjuncts will lose health insurance, that loss is somehow unimportant, is irrelevant for purposes of an irreparable harm showing, and unfairly minimizes those adjuncts' suffering.

- 9 -

asserting that the primary policy advanced by Title VIII of the CARES Act is to maintain higher education for the benefit of students.  D. Mem. at 24-25.  But the adjuncts, who teach and advise thousands of CUNY students, do work which is *essential* to maintaining higher education for the students.  Reinstating them will benefit thousands of students.  Further, Defendants do not contest, and therefore concede, that any hardship CUNY endures by paying the adjuncts is outweighed by the hardship those adjuncts will face being unemployed.  The balance of the equities and the public interest favor PSC.

Dated: New York, New York
August 3, 2020

Respectfully submitted,

*/s/ Hanan B. Kolko*
Hanan B. Kolko
Kate M. Swearengen
Dan M. Nesbitt (N.Y. admission pending)
Cohen, Weiss and Simon LLP
900 Third Avenue, Suite 2100
New York, New York 10022-4869
Telephone: (212) 356-0214
hkolko@cwsny.com
kswearengen@cwsny.com
dnesbitt@cwsny.com

Peter L. Zwiebach
The Professional Staff Congress/CUNY
61 Broadway, 15th Floor
New York, New York 10006
Telephone: (212) 354-1252
pzwiebach@pscmail.org

Michael J. Del Piano
Of Counsel
Robert T. Reilly
52 Broadway, 9th Floor
New York, New York 10004
Telephone: (212) 228-3382
michael.delpiano@nysut.org

Counsel for Plaintiff